Congress issued a clear mandate when it enacted USERRA. Employers must treat service members who take military leave as if they never left. Nonetheless, Nevada penalized Mr. Lehman for serving his country by charging him almost $40,000 more for pension credits than he would have paid but for his period of military service. That violates USERRA, and the District Court erred both in interpreting the law and in implying the well-pleaded facts when it held it otherwise and dismissed the United States complaint. Could Mr. Lehman have purchased his airtime credits when he hit the five-year mark on August 26th of 2018? No, he could not if he had to wait until he was re-employed. But also at the 12B6 stage, the United States did plead that he could not have purchased them at the time, and so taking the well-pleaded facts. But to also answer your question, he had to wait until his time was credited when he returned. So being re-employed is a condition precedent to someone like Mr. Lehman purchasing airtime credits.  So Section 4318B2 is critically important in understanding that section. Our interpretation of that section may determine the result of this appeal. Is that right? That's right, Your Honor. So looking at that section, your contention is that the sentence that says no such payment may exceed the amount the person would have been permitted or required to contribute had the person remained continuously employed by the employer throughout the period of service described in subsection A2B means that not only can Mr. Lehman, should he have been able to buy his airtime credits, which is not, I think it's not disputed that he can buy them, the issue is the price, right?  You say that this, is this the key sentence that tells us when, at what price he can buy those credits? Yes, that's correct, Your Honor. Because for one, it says the person who was, the express language here says the person would have been permitted or required to contribute had the person remained continuously employed. It doesn't instruct us to treat him like another employee who had been employed the last three years and opted not to purchase the credits. I'm sorry, say that last thing again. When it says, it uses the word the person twice in that sentence, right, the person would have been permitted or required to contribute. And so I think that should be read as not a person who had been employed the last three years, a different employee who wasn't a service member and opted not to purchase the credits. Had he been continuously employed, he would have been employed on, in August of 2018 and had the opportunity to purchase those credits at that time. But because he wasn't there, he never had that opportunity. And so then that's where the amount that he's being asked to pay. Counsel, I mean, if we have to read harmoniously these sections together, to Judge Holcomb's point, you can't exercise this ability to purchase airtime credits until you're reemployed. But B-2 suggests you, which is more of a price or cost of it, you can't exceed the amount that someone else would have paid for had they been continuously reemployed. So if you read those two things together, someone can be reemployed, but then it has to be at the cost as if someone was there the entire time. So, I'm not sure if I, I might be misunderstanding your question. I guess what I'm saying is, you know, I guess I'm agreeing with you. If Mr. Lehman had been continuously reemployed and had never left for deployment, he would have been able to purchase airtime in August of 2018 at a certain price based on his age and salary at the time. Correct. And that's governed by B-2, even if he couldn't exercise that until he gets reemployed when he comes back in 2020. Yes, correct. He is entitled to the benefits that he would have had at that time had he been continuously employed. The only reason that he never had the opportunity to purchase these credits at that almost $40,000 cheaper price is because he wasn't there at the time. So what, I'm sorry, go ahead. So let me get ahead of myself a little here. So let's say hypothetically, just hypothetically, I were to agree with the United States in general on its reading of the statute. There's nothing in the statute which would provide, for example, that Mr. Lehman would be entitled to do better than employees who weren't called up, right? No, not at all. So, and there's no reason that the statute would provide that he should get a windfall, right? No, not at all. So would it be fair, let's say again, hypothetically, the panel were to agree with the United States in general on the reading of the statute. Would it be fair for us to say, but Mr. Lehman gets no windfall and he had the use of the money from 2018 to 2021 or whatever that exact time period was between when he would have been able to buy had he been employed and when he did buy. And so the benefit to him of having had the money for those three years should reduce the reduction that he should have to pay. So if the use of the money for three years was worth $5,000, that Nevada should get credit for that because otherwise he'd get a windfall? No, I don't think so, Your Honor, because Congress, when it created this provision, I think that it took into account a lot of these concerns that the District Court and Nevada has. And it created this provision at the end of Section 4318b2 that says it gives the time period where a person who returns to civilian employment has three times the amount of duration they had in service, not to exceed five years. And I think that in creating that provision, Congress took into account your concern here that. Yeah, but if for three years he'd had the money in the bank and he was earning, I'll make up a number, 4% interest on it, why wouldn't Nevada be entitled to a set-off for that in normal tort cases? You reduce money to present value. You take that into account in figuring out the damages in virtually every tort case. Why wouldn't Nevada be entitled to a reduction for the benefit that he got from having the money for three more years? How would that, doesn't that put him in a better position than the Deputy Attorneys General who weren't called up? Well, I will say, one, USERRA does have certain provisions where I think that this benefit section in general does give a benefit to service members that others don't get. And I think that having this section and the express provision that allows a person to have this period of time up to five years based on the amount of their service, to make these payments without having a corresponding provision that says, and to be reduced by the amount that the service member benefited because of time value of money, I think that Congress could have included that in if they were concerned about that. But Congress's main concern when creating the statute was not to make sure that service members don't have benefits that other employees do or that other employees don't have. There are several different benefits throughout USERRA that others don't have. Congress's focus, as demonstrated in the very beginning of the statute, it says it's three interests work to make sure that service members were made whole, that they weren't discriminated against for their service, that they weren't disadvantaged for their service. So I'm going to ask this question to your friend, too. So Nevada, in the United States' view, could have had a statute that said, if you're called up and you hit this mark, even though you're not employed, you can pay now. But keep in mind, if you don't pay now, you're going to have to pay more when you come back. So I don't think that they could have, because I think that that would have been kind of drafting around USERRA. How would it be drafting around USERRA if they said, you've hit this mark. Jimmy down the hall gets to do it now. He started the same day you do. So you have the right now to purchase it. But if you choose to purchase it later, you're going to have to pay in accord with the actuarial numbers in the statute. So the service members are not obligated to their way of serving. These are to protect their rights so that they aren't concerned with matters here. He was deployed. I think that that's assuming that facts also that aren't in the complaint, although I know it's just a hypothetical, of course, that he would have even had the opportunity to do that. But in military service, he might not be even reachable. He might have had no clue that that happened or might not be able to contact. There's the next section of B2, perhaps not make that available because it says any payment to the plan described in this paragraph shall be made during the period beginning with the date of reemployment. Yes. And so that would that would suggest that you couldn't force a service member to purchase the plan while they're on active duty service. Yes. I think that was maybe what I was trying to get at by saying it would be going around you, Sarah, because all of the rights under you, Sarah, in this pension provision. Apply upon reemployment, but I also don't see I tend to agree with Judge Bennett. Why? Why wouldn't there be a bit of a windfall by the time value of money of having money in 2018 that gets kept and the ability to purchase these credits? Like we're we're in the text of you, Sarah, especially in the in the pension provision says that we should allow that to happen. So I don't disagree that it very well puts him in a slightly better position than somebody else. I think, though, that in general, other service members don't have this opportunity to purchase for extra or non service members don't have this period of time to purchase like the service members are given. But also you Sarah has several provisions that we list in our brief. There's reemployment provisions, seniority benefits, health insurance while not working. There's a reemployment by the federal government provision that says if you return for reemployment and it's not reasonable to or it's impossible or unreasonable to reemploy him. The director of OPM has to find him a position in a different or in a different agency and ensure that he gets that position. There's durations following reemployment where service members can't be fired except for cause. And so those are both places where those give him express and a service member express preference and perhaps a windfall over another employee who was not a service member who could be fired at will it during that time or who then doesn't get the position in the other agency. So I think that Congress here was concerned more so with protecting the rights and the benefits of service members rather than protecting, making sure that they're not the people who are not service members don't get a little bit short end of the stick. NAVPERS or any pension plan can provide benefits for service members that are better or greater than those provided in USERRA, correct? Yes, correct. What is the benefit at issue here? Because I think there was a little bit of confusion perhaps with the district court below. Is it the right to purchase airtime credits or is it the credits themselves? What in your view is the benefit at issue? So the United States views the right to purchase the credits and the credit themselves all as the one benefit. I think the confusion here stems from that there was at the district court at one point the United States distinguished the benefit of the credit as far as not being tethered to service in the sense that these credits are for years that an employee didn't actually work. So the United States was distinguishing just in that very narrow sense that when it had made the statement of the right to purchase the credits. So then the district court in its opinion, though, created this new distinction between the right to purchase and the credit itself. It was completely distinct from that initial. And so that's where now it changes a little bit. And so the district court understood the United States position all along to include what she said was the credit substance of the credit itself. And I think also here it helps to think about what we're actually dealing with and the actual credit here, which is paying now for payments later. The more you have to pay now, the lower the value of your benefit overall because you're still getting the same amount of payments later. And so I think you really can't divorce the two. So our position has always been and I think that you can see that in the district court's opinion that she interpreted the United States position as such to include both the substance of the credit and the right to purchase it as being intertwined. If we if we decide for whatever reason that Mr. Lehman cannot exercise that one hundred one thousand dollar price that he's held to a higher price. What do we do with the the time delta between when he returned to work in October of 2020 and when he finally got the price that he was to pay in April of 2021? Is that in your complaint? Did you preserve that? So our position is that it is it's one claim. There's not a separate cause of action or a separate violation for that difference that instead goes to the amount of damages that he suffered or the prejudice. But at a minimum, even if you were to agree that he should have been paying the October 2020 rate, which is what the district court held. The United States would still ask that you reverse and remand because the district court misapplied the well-pleaded facts in the complaint where the district court said that he was entitled to it at the October 2021 2020 rates and that that is what he paid. But that's not what the United States complaint said. The United States complaint said that he paid at the April 2021 rate. So at a minimum, we would ask that you reverse and remand for that purpose. And I think I will reserve the remaining. Oh, nope. We're not. We'll give you some. OK, thank you. Two minutes for rebuttal. Good morning. May it please the court. Sam Levin from Groom Law Group on behalf of defendant appellee, the public employees retirement system of Nevada. There are two independent bases on which this district court sorry, on which this court should affirm the district court's decision under the plaintext of you, Sarah. First, as the district court correctly held, airtime is not an accrued pension benefit earned for service. Second, because Section 43 18 is only effective upon reemployment service members. The defendants did not require a contribution higher than would have been required had service members remained continuously employed. Mr. Levin, let's start with the statutory text and I want to go to a to B, which says that each period served by a person in uniform service shall upon reemployment be deemed to constitute service. And then I'll move ahead for the purpose of determining the non-forfeit ability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan. Seems to me the district court was focusing just on accrued benefits and didn't really say much about the accrual of benefits. And when I look at non-forfeit ability of the person's accrued benefits, I do think of pension plan, paying into a pension plan, and receiving something that cannot be forfeited. But the accrual of benefits seems to contemplate something like airtime credits because it means that if someone's away on deployment, their time should count toward this threshold, this five-year threshold, for the ability to buy airtime credits. So why isn't the accrual of benefits sufficient for coverage under USERRA to encompass the purchase of airtime credits? Your Honor, I believe that when section 4318B2 is talking about accrued benefits and then it says pursuant to subsection A and it's referring back to subsection A, I don't think there's a textual basis for drawing a distinction between accrued benefits in section B2 and the accrual of benefits in section A2B. I think those should have a harmonious meaning. And specifically in the context of airtime, as Mr. Lehman, for example, is working additional years B-Day at his job at the AG's office, or while he's serving in the Nevada National Guard, he's not accruing airtime credits. That's not something he's earning for work that he's doing. But what he's accruing is the ability to purchase that airtime. I think under the district court's interpretation, he's not even accruing that. The five-year minimum requirement period, that's not a reward for his service. That's just a minimum threshold under the internal revenue. Let me ask this. I mean, the district court acknowledged that the definition of benefits under USERRA is quite broad. And one of the terms of the definition of benefits is not just terms, conditions, or privileges of employment. And so I want to focus you on the word privilege, because a privilege is something that a person could exercise the option to do, but wouldn't necessarily have to do, such as the purchase of airtime credits. So why, and under the case law, we're supposed to look at this in a liberal context, to read the statute liberally. So did the district court's reading, was it too narrow by focusing on accrued benefits without contemplating the privilege of purchasing airtime credits? No, Your Honor. So we don't dispute that whether you're looking at the right to purchase or the airtime credits themselves, that the definition in 4302 of just benefit is broad enough to incorporate that. But then we don't think that the word accrued is doing any particular work in the statute. We think it would be rendered superfluous. And with respect to the- But why not? If the privilege, I'll just, I'll translate some words. If the privilege of a state employee is to purchase airtime credits after five years, the accrual of that benefit is, you can't do it at year three. You can't do it at year four. It has to be at year five. Why isn't the ability to purchase airtime credits as a privilege of employment something that's contemplated under USERRA? So if section 4318b2 had just used the word benefit and just incorporated the definition of benefit in section 43032, then I would agree with you, Your Honor. But there's an additional word there that's added that we think has to be doing some additional work. And if all it means, as the United States asserts- But there isn't a, there's not a separate definition for accrued benefits. There's a definition for benefit, and it encompasses many different things. So you're saying we should ignore the word, the broad definition of benefit because the word accrued is right next to it. And instead of looking at the statutory definition, we should look at a California Supreme Court decision? No, Your Honor. I'm not saying that this court should ignore the word benefit, but I think it has to be modified by the word accrued. And it's true that there's no specific definition of the term accrued benefit under USERRA. But there is under the Internal Revenue Code and the Employee Retirement Income Security Act, which are the two main sources of federal law governing pension benefits. And I don't think it's an accident that we happen to see the phrase accrued benefit here and not in other sections. Counsel, let me- No, you go ahead. Let me go to a different section. I want to look at, and I'm having some trouble making sure I get the right numbers, but 4318, I think it's B2A, but I'll read it. A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services. Do you see where I am? Yes, Your Honor. So why didn't Nevada violate this section? I'm sorry. Go ahead. A couple points, Your Honor. First, I would say that during the investigation here below, the Department of Labor actually expressly conceded that there was no violation of that section. So that's at the excerpts of record, page 152. But putting that aside, I'm trying to understand why it isn't a violation here, because he wasn't treated the same as if he'd had no break in service, right? So I think he was treated the same as if he had no break in service. He received, upon reemployment, the full credit for his time. So he's not treated as having a break in service. The only question is, is he entitled to go back in time and lock in a retroactive price? And we think that that is a question under B2, not a question under A2A. If I may follow up on Judge Sanchez's question, let me give you a hypothetical, which may help us understand your definition of accrued. So we've got Mr. Lehman. We know what his facts are with respect to him. Let's take another hypothetical employee, Ms. Jones, begins working at the Nevada AG's office same day in August of 2013, gets called up to active duty in May of 2017. In my hypothetical, she returns. Her active duty service ends August 25th of 2018. She's reemployed August 26th of 2018 at that five-year point. Can she buy five years of airtime on that day? Yes, Your Honor. Well, hasn't she accrued benefits over some 15 months that she's been on active duty? Isn't that precisely what accrual is? So, Your Honor, in that circumstance, that protection, I don't think we even need to reach the B2 issue because I think that protection would fall under A2A. You have to be treated as not having a break in service and so have to be treated the same way as everyone else. And I think it goes back to that airtime in particular. It's not something that's being accrued. It's being earned in exchange for service. And so I think the only way to get to that conclusion is to adopt the United States' definition, which is essentially that it just has to be something that exists. And we think that would render the word accrued in the statute superfluous and would be essentially concluding that it's a coincidence that Congress decided to use a term that has a specific meaning, accrued benefit. But under Judge Holcomb's hypothetical, if someone is away for deployment for a couple of years or a few years and comes back on August 26, 2018, that service time would count toward the ability to purchase airtime credits. Correct. So they're earning something, but you don't want to call it a benefit. What are you calling it in that case? So I agree that it's a benefit. I just don't believe that that is a benefit. I don't believe that's an accrued benefit. So, counsel, would Nevada law, as it currently exists, have allowed the pension system or the AG's office, whoever would send the notice, to Mr. Lehman while he was on active duty to say, you've hit this five-year mark and if you want to pay, pay now. But if you don't want to pay, you may have that right later, but you'll have to pay more. Did Nevada law allow such a thing to occur or would that not have been legal because he wasn't then employed? I'm not aware of any provision in the Nevada Code that would authorize that, Your Honor. And I think part of what Your Honor may be getting at here is it seems like, in a sense, perhaps the perfect way to solve this, is there any prejudice versus the extra benefit when fall time value of money would be if, in fact, in 2018, Mr. Lehman were able to purchase this, if that's what he wanted to do. And if Congress wanted to protect that right, if that's the way they wanted USERRA to function, it could have done that. And in Section 4318, the protections triggered upon reemployment, but if you look at Section 4317, which deals with health benefits, the way that's structured is that the service member, while out on leave, before being reemployed, and regardless of whether they are ever reemployed, can elect to continue their health care coverage for up to two years while on service and pay for it. It seems like the United States is, at least on one point, perhaps agreeing with you that I'm hearing their answer is Nevada, even if the statute had allowed it under USERRA, couldn't have said to him, pay now. Correct, Your Honor. So getting to the question I asked your friend, obviously you'd like to win the case, you'd like us to affirm, but if that weren't going to happen, hypothetically, is it your position that Nevada should be entitled to some set-off or some diminution in damages for the time value of money for the three or so years that Mr. Lehman had the benefit of the money? Your Honor, that's not something I thought about before you raised that as a hypothetical, and I think the question would be, is there some sort of federal common law entitlement to that, even though it's not expressly contemplated by the statute? And I'm not sure what the answer to that is, but I think the correct way to avoid that problem is to not interpret the statute to give Mr. Lehman or any other returning service members a windfall in the first place. And one of the things that counsel for the United States said is that, well, it's okay if Mr. Lehman and other returning service members get an extra benefit here because there are other instances in USERRA where extra benefits are provided, one of which is that, and this is what the Supreme Court was discussing in Fishgold, is that after you're rehired pursuant to USERRA, you can't be fired without cause for up to a year. And what the Supreme Court says in the Monroe case that we cite, and this is footnote 12 on page 561 of Monroe, is that one could argue that such protections amount to preferential treatment and therefore are inconsistent with the general position that we're advocating for here, that USERRA should not be read as providing extra benefits. Those protections are actually better understood as protection against discrimination that would not have occurred were it not for reserve obligations. And so the Supreme Court says where you have some things that could be characterized as extra benefits, but they're really just prophylactic protections to make sure that the service member is not made worse off, that's not inconsistent with what the Supreme Court says in Monroe is the general principle that we should not be awarding extra benefits to returning service members. If we don't agree with you on the reading of accrued benefits, let's say we conclude that accrued benefits does include the right to purchase airtime credits after five years, does your argument fall apart under B-2? In other words, the no such payment may exceed the amount a person would have been permitted. Would you agree then that that would include the price of the benefits in August of 2018, or do you have a separate argument as to how to read B-2? No, Your Honor, we have a separate argument as to how to read B-2. I believe that's also what the district court held, that the protection is triggered upon reemployment. And so they have to be treated the way anyone else who had served that period of time and has their credit would be treated after reemployment. But how do you account for this language that says had the person remained continuously employed by the employer? It doesn't mention reemployment. It says if the person had been there the entire time, you can't impose a cost that's greater than that circumstance. How do you get around that language? I believe that pretty much everything else in the provision is triggered upon reemployment, and the threshold here is talking about a person reemployed. And I think the other check that we can put on that to see if that's a reasonable interpretation of the statute is that would, as the United States advocates for, essentially be imposing a but-for test, what would have happened but for their service. And we can see in B-3 that where Congress wanted to set forth a but-for test, it did so clearly, and it also limited that in the B-3 context to situations where the outcome was reasonably certain. There's no such limitation in B-2. And so not only would we be importing a but-for test that's not in the text of B-2, it would be unlimited and I think would raise some difficult factual questions. Whether you describe it as but-for or not, it still says had the person remained continuously employed. So the statute is setting up a counterfactual of some kind. Regardless of the connection to it, what it's ultimately saying is we're not going to discriminate against service members who had to deploy. We're going to treat them the exact same as if they had been continuously there the entire time. So whether you import a but-for or not, it's setting up a counterfactual. And I'm having a hard time seeing how you get around that language. So I think the right way to view that, it certainly is setting up a counterfactual. I mean, the entire premise of Section 4318 is a counterfactual. Right. Or we wouldn't be here at all. But that's being triggered upon reemployment. And so had he remained continuously employed, when he makes the purchase, then he's being charged the same price that he would have been. One quick question. If we affirm on this issue of the cost for Mr. Lehman's purchase of airtime, what do we do with the delta between when he was reemployed in October of 2020 and when he got his price in April of 21? Is that something that plaintiff United States has preserved? I don't believe so, Your Honor. They disclaimed it before the district court as a separate violation. And even if this court were to reach the issue, I think it's very straightforward as it pertains to PERS, because the allegations are that once the state and the AG's office corrected Mr. Lehman's record to recognize his military service, PERS responded to his request to purchase airtime the next day. So I think there's clearly no delay against PERS. And then with respect to state and the AG's office, there's an allegation that the delay running from October prejudiced Mr. Lehman. But that's not the relevant legal question, because the statute does not impose an immediacy requirement that the moment that Mr. Lehman requests reemployment, he's entitled to all of these things. Just to give you a couple examples of that, the Department of Labor regulations allow two weeks for rehiring. That's 20 CFR 1002.181, and then provides up to 90 days to make required employee contributions. That's 1002.262. So what the United States would have needed to allege had they preserved this theory at all is that the state and the AG's office waited beyond some reasonable period of time and that a delay beyond that reasonable time caused additional prejudice to Mr. Lehman. Those facts have not been alleged, and that theory has not been presented. All right. Thank you, counsel. Thank you. I just have two quick points that I want to make. One regarding the but-for argument that my friend on the other side was just discussing. I would point this Court to its opinion in Balestagi, and there the Court twice used, quote, but for the period of military service, end quote, to paraphrase very similar continuously employed language that is found in Sections 43.13 and 43.16 of USERRA. Also, there are very tiny differences in how the Court used that continuously employed language in the three different sections here, 43.18, which we're talking about, and then those two sections at issue in Balestagi. So I think that demonstrates that sometimes Congress does use different terms for functional equivalence. And then the other point I just wanted to make really quickly was to the question that you were asking or your point, Judge Sanchez, about whether the district court interpreted accrued benefits too narrowly. Of course, yes, we agree. But as this Court, again, recognized in the Balestagi case, the statute of benefits is very broad, and there this Court concluded that these hour credits, which had absolutely nothing to do with pensions or benefits as defined by USERRA because they were advantages or gains that accrue by reason of employment, contract, or agreement, accrue being also present in the definition of benefits. And I think that the Balestagi interpretation there of benefits forecloses the argument that accrue has some pension-specific meaning under USERRA. I think in Balestagi it was the hours that a longshoreman could accrue in order to rise in class and get certain benefits. And so the panel there did recognize that as a type of benefit as a fallback measure. Correct. So I would assume that under principles of statutory interpretation, if Congress used accrue in the definition of benefits to not be pension-specific, we shouldn't read a pension-specific definition into this other provision. So I thank you, and the United States asks that this Court reverse and remand. All right. We thank counsel for their arguments. The case just argued is submitted, and with that we are adjourned for the day. All rise. This Court for discussion is adjourned.
judges: BENNETT, SANCHEZ, Holcomb